USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/23/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

ERVAN PURNELL,

                               Petitioner,

            -v-

UNITED STATES,

                              Respondent.

------------------------------------------------------------------X

12 Cr. 006 (PAE)

15 Civ. 636 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

In May 2012, a jury convicted Ervan Purnell of assaulting a federal employee, based on his having attacked—and smashed a cane over the head of—a Veterans Administration employee. In September 2012, the Court sentenced Purnell to 108 months imprisonment. On Purnell's direct appeal, the Second Circuit affirmed his conviction. Purnell, now *pro se* and incarcerated, petitions to vacate his sentence under 28 U.S.C. § 2255, arguing that his counsel rendered ineffective assistance. For the following reasons, the petition is denied.

**I.    Background**

On January 4, 2012, a grand jury indicted Purnell of one count of willfully and forcibly assaulting a federal employee with a dangerous weapon and inflicting bodily injury, in violation of 18 U.S.C. § 1114. *See* Dkt. 5. On May 2, 2012, the case, originally assigned to Judge Castel, was reassigned to this Court. Dkt. 18.

This Court presided over a jury trial between May 14 and May 21, 2012. Dkt. 26. The evidence adduced at trial conclusively established that on December 23, 2011, Purnell entered the Veterans Affairs Medical Center in Manhattan; grew distressed by the customer service he

had received at the medical center; precipitated an argument with pharmacist Mohinder Sharma, a federal employee; and smashed Sharma over the head with his cane. *See* Dkt. 26 ("Tr."), at 39, 50–51, 113, 164. As a result of the blow, Sharma required seven staples in his scalp and suffered headaches, seizures, and psychological problems. Tr. 80, 168. At trial, Purnell testified; he conceded that he had hit Sharma with his cane but claimed that he had acted in self-defense: He testified that Sharma had told him "to get the hell out of his office" and then "bashed" him in the face with a telephone. Tr. 196. Because Sharma was "still coming at [him] with the phone still in his hand," Purnell "swung [his] cane at [Sharma] to keep [Sharma] from hitting [him] again." *Id.* Sharma, needless to say, denied having attacked Purnell, and the direct and circumstantial evidence at trial overwhelmingly refuted Purnell's claim of self-defense.

The jury began deliberating during the afternoon of May 15, 2012. *See* Tr. 301. The next day, May 16, 2012, a juror was dismissed for medical reasons and was replaced by the first alternate. Tr. 334. The Court instructed the reconstituted jury to "set aside and disregard [their] earlier deliberations and begin [their] deliberations anew." *Id.*

On May 17, 2012, the jury foreperson sent a note stating:

> Your Honor, there is one juror who is being unreasonable in our deliberations and we will never be able to reach a verdict. We are concerned that prior experiences which he has shared with the jurors but did not disclose at voir dire have influenced him. Can you please advise how to handle. Thank you.

Tr. 361. On May 21, 2012, after a weekend recess and extensive discussions with counsel, the Court questioned the juror at sidebar, outside the presence of the jury. *See* Tr. 378–82. There, the Court learned that the juror had been the victim of multiple crimes and had not disclosed those experiences during voir dire despite having been asked on-point questions on the subject. The juror stated that he "didn't think it was relevant." Tr. 392–94, 401–12. With the consent of both parties, the Court found that the juror could not be fair and impartial, and dismissed him for

cause. Tr. 424. The Court recalled the second alternate and again informed the jury to "set aside and disregard [their] earlier deliberations and begin [their] deliberations anew." Tr. 427.

Later on May 21, 2012, the jury returned a verdict, finding Purnell guilty of assaulting a federal employee with a dangerous weapon. Tr. 431. On September 27, 2012, the Court sentenced Purnell to 108 months imprisonment, followed by three years of supervised release. Dkt. 35.

On October 11, 2012, Purnell, represented by counsel, appealed. Dkt. 36. He argued that the Court should have given an *Allen* charge in response to the jury note quoted above. *See* Dkt. 40, *reported at United States v. Purnell*, 541 F. App'x 128 (2d Cir. 2013) (summary order). The Second Circuit rejected that claim, holding that this Court "acted well within [its] discretion in deciding not to give an *Allen* charge and instead to investigate the jury's allegation of misconduct." *Id.* at 129. In a supplemental *pro se* submission, Purnell argued that the Government withheld certain evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); the Circuit held that these claims were "without merit." *Id.* Purnell also argued that defense counsel had provided ineffective assistance; the Circuit declined to reach that argument, noting that it "is more properly brought through a motion under 28 U.S.C. § 2255." *Id.* at 130.

On January 26, 2015, Purnell filed a motion to vacate his sentence under § 2255. Dkt. 43. On April 15, 2015, Purnell filed a supplemental memorandum of law in support of his petition. Dkt. 50. On April 21, 2015, the Government filed its opposition. Dkt. 49. On May 5, 2015, Purnell submitted a brief letter in reply. Dkt. 51.

## II. Applicable Legal Standards

"A defendant in criminal proceedings has a right under the Sixth Amendment to effective assistance from his attorney at all critical stages in the proceedings." *Gonzalez v. United States,*

3

722 F.3d 118, 130 (2d Cir. 2013). Under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant claiming ineffective assistance of counsel must establish two things:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Rivas v. Fischer*, 780 F.3d 529, 546–47 (2d Cir. 2015) (quoting *Strickland*, 466 U.S. at 687). The Court's "scrutiny of counsel's performance must be 'highly deferential'" because counsel are entitled to "'a strong presumption that [their] conduct falls within the wide range of reasonable professional assistance.'" *Id.* at 547 (quoting *Strickland*, 780 F.3d at 689). "This test applies in the appellate context as well as at trial." *Lynch v. Dolce*, No. 14-1675, 2015 WL 3771891, at *5 (2d Cir. June 18, 2015) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)).

"In ruling on a motion under § 2255, the district court is required to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Gonzalez*, 722 F.3d at 130 (quoting 28 U.S.C. § 2255)). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Id.* (citing *Machibroda v. United States*, 722 F.3d 118, 131 (2d Cir. 1962)).

### III. Discussion

Purnell raises several claims. Presumably because this is a § 2255 petition following an unsuccessful direct appeal, he frames each as a claim of ineffective assistance. First, Purnell challenges the procedures this Court used in dismissing the two jurors and substituting the two alternates. Second, he argues that the Court's jury instructions were deficient because they improperly consolidated multiple crimes into a single offense, constructively amended the

indictment, and failed to inform the jury of lesser-included offenses. Third, Purnell argues that the Government presented perjured testimony at trial. Finally, Purnell argues that he suffered prejudice from the cumulative effect of these alleged errors, and that his appellate counsel was ineffective because he failed to raise these issues. The Court addresses these claims in turn.

### A.     Juror Substitutions

As noted, the Court was forced to dismiss two jurors and recall the two alternates after the jury had begun its deliberations. Purnell argues that his trial counsel was ineffective in (a) failing to move for a mistrial when this Court purportedly infringed upon the secrecy of the jury, and (b) failing to question the recalled alternates to ensure that they adequately remembered the evidence presented and had not discussed the case with anyone else. The Second Circuit has already held that the Court's responses to the juror issues were "appropriate[]" and "proper." *Purnell*, 541 F. App'x at 129. For avoidance of doubt, however, the Court recounts the relevant events and addresses Purnell's current claims as to these events.

The first issue with respect to the jury arose on May 16, 2012. That morning, the jury sent a note stating: "Your Honor, the jury appears to be deadlocked. No one has changed their vote since yesterday." Tr. 320. At that point, the jury had been deliberating for approximately four hours. Tr. 321. Recognizing the brevity of deliberations to that point, the Court instructed the jury to "continue to deliberate" and "to consider one another's views with an open mind," but "not to give up a point of view . . . that you conscientiously believe in, simply because you're outnumbered." Tr. 322. Such instructions are routinely given when a jury reports a deadlock. *See United States v. McDonald*, 759 F.3d 220, 224–25 (2d Cir. 2014) (citing *Allen v. United States*, 164 U.S. 492, 501–02 (1896)).

Earlier that morning, Juror Number 12 had informed the Court's courtroom deputy that she wasn't feeling well. Tr. 319. She requested ginger ale and a lower temperature in the jury room, which were provided. *Id.* After the Court had responded to the jury's note reporting a deadlock, Juror Number 12 told the deputy that she wished to see a nurse. Tr. 323. The nurse reported that the juror had an "enormously high" blood pressure and "recommend[ed] in no uncertain terms that the juror be excused." Tr. 323–24. With the consent of counsel for both parties, the Court dismissed Juror Number 12 for medical reasons and recalled the first alternate. Tr. 325–26, 328–30. As Purnell concedes, the Court clearly has discretion to dismiss jurors for medical reasons. *See, e.g., United States v. Thompson*, 528 F.3d 110, 121 (2d Cir. 2008); *United States v. Paulino*, 445 F.3d 211, 226 (2d Cir. 2006).

At the time Juror Number 12 was dismissed and the first alternate was recalled, Purnell himself expressed concern "that the alternate has not viewed the evidence in the trial." Tr. 330. Both Purnell's counsel and the Court, however, explained that the alternate jurors had been present for all the evidence, arguments, and instructions, and they were at no disadvantage relative to the original jurors. Tr. 330–31. The Court had, pointedly, not excused the alternates until after the closing arguments and jury charge had been completed. Tr. 301–02. The Court had also instructed the alternates, at the time they were excused, "not to discuss the case" because "there may be occasion to ask a juror to substitute, to take the place of, a regular juror who has grown ill, for example." *Id.*

When the first alternate arrived, the Court gave the following instruction to the newly reconstituted jury:

> I instruct all of you that as you begin your deliberation, you must set aside and disregard your earlier deliberations and begin your deliberations anew beginning with the choice of a foreperson. You should not and you must not discuss or mention any statements or comments made during your prior deliberations when

> you begin these new deliberations or for that matter at any point during your new deliberations. That is because [the first alternate] was not present to hear the earlier deliberations and under the law, a jury verdict must be the product of the deliberations of all 12 people who reach that verdict. That's the reason why. So with that I direct you to the jury room to begin your deliberations anew.

Tr. 336. This instruction is all that Federal Rule of Criminal Procedure 24 requires. *See* Fed. R. Crim. P. 24(c)(3) ("If an alternate replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew."); *see also, e.g.*, *United States v. Stinn*, 379 F. App'x 19, 22 (2d Cir. 2010) (summary order); *United States v. Dixon*, 79 F. App'x 456, 457–58 (2d Cir. 2003) (summary order). Rule 24 does not, as Purnell claims, require that the Court question a recalled alternate as to whether he had discussed the case with anyone else, a subject explicitly covered in the Court's jury charge. *See* Tr. 301–02. And there was no request made at trial that the Court do so. Nor does Rule 24 require that the Court inquire of a recalled alternate whether his memory of the trial has faded. And under the circumstances of this case, any such claim would have been especially dubious, in that just one day had passed since the alternates had been excused, and each juror was able to refer to his notes (which the Court's deputy had retained) and to request to review testimony or other evidence.

The next jury issue arose in the late afternoon on May 16, 2012. The jury sent a note, which read: "Your Honor, unfortunately, we have discussed the evidence, read and reread the testimony and have reenacted the assault exhaustively. Certain members of the jury have stated that they will not change their opinion no matter what. Because of this we regretfully must state that we are at a deadlock." Tr. 341–42. Because the newly impaneled jury had been deliberating for only two hours, the Court, with the consent of counsel for both parties, instructed the jurors to continue deliberations:

> At this point you have been deliberating for a little over 2 hours, since 2:00 p.m. I have to ask you to go back and continue deliberating according to the instructions that I gave you earlier.
>
> As to the part of your note that specifically reads, certain members of the jury have stated that they will not change their opinion no matter what, I must instruct you using the same language as I used before when I charged you initially yesterday.
>
> Each juror is entitled to his or her own opinion, but you are required to exchange views with your fellow jurors. This is the very essence of jury deliberation. It is your duty to discuss this evidence. If you have a point of view and after reasoning with other jurors it appears that your own judgment is open to question, then, of course, you should not hesitate in yielding your original point of view if you are convinced that the opposite point of view is really one that satisfies your judgment and conscience. You are not to give up a point of view, however, that you conscientiously believe in because you are outnumbered or outweighed. You should vote with the others only if you are convinced on the evidence, the facts and the law that it is the correct way to decide this case.

Tr. 343–44. Again, this instruction is routinely given when a jury reports a deadlock. *See McDonald*, 759 F.3d at 224–25 (citing *Allen*, 164 U.S. at 501–02).

On Thursday, May 17, 2012, after asking for read-backs of testimony and clarification of the governing law, the jury foreperson sent the following note:

> Your Honor, there is one juror who is being unreasonable in our deliberations and we will never be able to reach a verdict. We are concerned that prior experiences which he has shared with the jurors but did not disclose at voir dire have influenced him. Can you please advise how to handle.

Tr. 361. The Court discussed the issues raised by this note extensively with counsel for both parties, solicited briefing, and excused the jury until Monday so as to have a three-day weekend to consider the best course of action. *See* Tr. 361–75.

On Monday, May 21, 2012, the Court resumed the proceedings. Rather than meeting with each juror individually or with the foreperson alone, the Court brought the jury into the courtroom, and instructed the jury "to return to the jury room, not to speak with each other about the case, not to deliberate, but simply through [the] foreperson to send [the Court] a note that

8

identifies by juror number the juror who is being referred to in [the] note." Tr. 388. The jury identified the juror in question as Juror Number 2. Tr. 389.

The Court then met with Juror Number 2 at the sidebar, out of the presence of other jurors. Tr. 388–89. To begin, the Court clarified that he should not reveal what he had said to other jurors, or what they said to him; he should identify only "what the experiences were." Tr. 390–91. After initially claiming that "[t]here was really no prior experience," Tr. 390, Juror Number 2 related a single experience: He stated that, in the 1990s, "some kids [were] running around" in the street and hit him with a bat, breaking his arm. Tr. 392. He stated, however, that that experience would not affect his ability to be fair and impartial in this case. Tr. 393–94. Because the jury note referred to "experiences, plural," the Court asked Juror Number 2 if there was "some experience besides the episode with the baseball bat." Tr. 399. He responded that he could not think of any. *Id.*

To "make absolutely sure" that the Court was aware of "the full universe" of experiences to which the jury note had referred, the Court then brought the jury back into the courtroom. The Court instructed the jury "to go into the jury room, not to otherwise discuss the case but simply to write out in a note by [the] foreperson just what the experiences are that were being referred to in the note." Tr. 401. The jury's next note stated that "Juror No. 2 disclosed the following experiences to the other jurors in our deliberations: 1, he was assaulted with a baseball bat; 2, he was assaulted by a police officer; 3, he was raped; 4, he took anger management classes." *Id.*

The Court then had a further discussion with Juror Number 2 at sidebar, again out of the presence of the other jurors. After reminding him not to relate what he had told the other jurors, the Court asked him about each incident listed in the jury's note. Tr. 404–11. Juror Number 2 explained that, roughly 13 years earlier, a police officer in Yonkers had punched him in the

mouth during a traffic stop, Tr. 404–06; that he had been raped by an adult neighbor when he was five years old, Tr. 407–08; and that he had taken anger management classes in 2008 to help improve his relationship with his teenage foster children, Tr. 409–10. He also explained that, despite the Court's having inquired during voir dire whether any potential juror had been a victim of a crime, he had not reported these incidents because he "didn't think it was relevant" and hadn't thought of himself as the victim of a crime. Tr. 411. As to each incident, he maintained that the experience would not affect his ability to be fair and impartial in this case. Tr. 406–07, 408–09, 410.[1]

With the consent of both parties, the Court dismissed Juror Number 2 for inferable bias, finding that his failure to disclose these incidents during voir dire and his evasiveness when questioned supported striking him for cause. Tr. 421–24. As the Second Circuit has recognized, an untruthful response during voir dire can prejudice a defendant's right to a fair trial, especially where that untruthfulness appears to have been deliberate. *See United States v. Colombo*, 869 F.2d 149, 151 (2d Cir. 1989); *see also id.* at 151–52 (collecting cases). Accordingly, dismissing Juror Number 2 was vital to protecting Purnell's right to a fair trial.

The Court thereafter re-impaneled the jury with the second alternate replacing Juror Number 2. Tr. 427. As it had when the first alternate replaced Juror Number 12, the Court instructed the jury to begin deliberations anew:

> I am instructing you that as you begin your deliberations you must set aside and disregard your earlier deliberations and begin your deliberations anew beginning with the choice of a foreperson. You should not and must not discuss or mention any statements or comments made during the prior deliberations when you begin these new deliberations, at any point during your new deliberations. That is because [the second alternate] was not present to hear the earlier deliberations and under the

---

[1] In the course of the discussion, Juror Number 2 expressed his belief that "God fights our battles for us," Tr. 407, but similarly affirmed that his religious views would not prevent him from following the Court's instructions, including as to self-defense, Tr. 414.

> law a jury verdict must be the product of the deliberations of all 12 people who reach the verdict.
>
> It obviously follows from that that nothing that the prior juror [number 2] said should be referred to, but that goes beyond that. You should begin your deliberations truly anew.

Tr. 427–28. Again, this instruction was wholly consistent with Rule 24(c)(3) and common practice in this district. *See, e.g.*, *United States v. Chai*, No. 13 Cr. 290 (PAC), 2015 WL 293995, at *8 (S.D.N.Y. Jan. 22, 2015) (jury instructed that "[y]our deliberations [t]hat you did before must be set aside, and you must disregard your earl[ier] deliberations and begin your deliberations anew"); *United States v. Hillard*, 546 F. Supp. 1351, 1356 (S.D.N.Y. 1982), *aff'd*, 701 F.2d 1052 (2d Cir. 1983) (similar).

Later that day, at 12:45 p.m., the jury informed the Court that it had reached a verdict. Tr. 430–31. It found Purnell guilty of the single count charged in the Indictment, namely, assaulting a federal employee with a dangerous weapon. Tr. 431.

Based on the relatively short time period that elapsed between impaneling the second alternate and receiving the jury's verdict, Purnell infers that Juror Number 2 was the lone hold-out for a not-guilty verdict and that the jury did not follow the Court's instructions to begin deliberations anew. Both arguments, however, are based on speculation. As to the first point, the jury had not reported the numerical division of its views, only that one juror was being "unreasonable" and had invoked personal experiences that he had failed to disclose during voir dire. And as the record reflects, the Court, in questioning Juror Number 2, was careful to safeguard the secrecy of the jury's deliberations and did not inquire into the jury's views or votes as to the case, or, for that matter, Juror Number 2's. And given the straightforward nature of the issues and the overwhelming proof of Purnell's guilt, it is unsurprising that the reconstituted jury, giving the case a fresh look, was able to reach a verdict in about an hour. As the Second Circuit

has instructed, the Court should not "presume misconduct"; it is more appropriate "to presume that the jury has complied with the court's instructions and admonitions, absent evidence to the contrary." *Hillard*, 701 F.2d at 1059 (citation omitted). Because the Court, contrary to Purnell's claims, did not infringe on the secrecy of the jury or improperly replace jurors with alternates, Purnell cannot satisfy either prong of the *Strickland* test as to this claim: His counsel was not deficient in failing to object to the Court's actions, and Purnell suffered no prejudice as a result.[2]

### B. Jury Instructions

Purnell's next set of arguments challenges the Court's jury instructions. He argues that the Court erroneously consolidated multiple offenses into a single offense, constructively amended the indictment, and omitted instructions on lesser-included offenses. He further argues that his counsel was ineffective in failing to object to the charge as given.

Purnell was indicted under 18 U.S.C. § 111, which reads:

(a) In general.—Whoever—

> (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; or

---

[2] The cases on which Purnell relies are not to the contrary. *See Herring v. New York*, 422 U.S. 853, 862–63 (1975) (holding that trial court cannot deny defense counsel an opportunity to make closing arguments); *Hillard*, 701 F.2d at 1058 (affirming conviction where an alternate replaced an ill juror, and the "regular jurors were carefully instructed to start from scratch"); *United States v. Viserto*, 596 F.2d 531, 540 (2d Cir. 1979) (affirming convictions while cautioning against the unusual jury selection procedures employed by trial court); *United States v. Lamb*, 529 F.2d 1153, 1155 (9th Cir. 1975) (reversing based on trial court's decision to substitute an alternate juror after original jury had reached a verdict); *United States v. Hayutin*, 398 F.2d 944, 950–51 (2d Cir. 1968) (holding that no more than 12 jurors may deliberate at one time). Notably, Rule 24(c) was amended in 2002 to clarify that an alternate juror may replace an original juror after deliberations have begun as long as the Court instructs the jury to begin deliberations anew. *See* Fed. R. Crim. P. 24(c)(3). Accordingly, to the extent these cases suggest that the Court may not replace a juror after deliberations have begun, they are no longer good law.

> (2) forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service,
>
> shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.
>
> (b) Enhanced penalty.—Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 111. In plain English, § 111(a) makes it a crime to "forcibly assault[]" any federal officer while that officer is engaged in "the performance of official duties." And § 111(b) provides for heightened penalties if the attacker "uses a deadly or dangerous weapon" or "inflicts bodily injury."

Purnell is correct that "§ 111(b) defines a separate offense rather than simply a sentencing enhancement." *United States v. Chestaro*, 197 F.3d 600, 607 (2d Cir. 1999). But the grand jury indicted Purnell for violating § 111(b), *see* Dkt. 5, and the Court instructed the jury as to the elements of that specific offense:

> In order to find the defendant guilty of this crime, you must find the following five things beyond a reasonable doubt:
>
> First, that on or about December 23rd, 2011, the Veterans Administration pharmacy employee, Mohinder Sharma, was either an officer, employee of the United States, or was assisting such an officer or employee in the performance of that officer's or employee's official duties.
>
> Second, that on or about that date, the defendant forcibly assaulted, resisted, opposed, impeded, intimidated or interfered with Mr. Sharma, and that this forceable action involved actual physical contact with Mr. Sharma.
>
> Third, that at that time Mr. Sharma was either engaged in the performance of his official duties or was assaulted on account of his official duties.

13

> Fourth, that the defendant acted willfully; in other words, that he acted knowingly, intentionally and voluntarily.[3]
>
> And fifth, that the defendant used a deadly or dangerous weapon to commit such acts or that the defendant's actions resulted in bodily injury to Mr. Sharma.

Tr. 288–90. Accordingly, neither the Government nor the Court improperly conflated § 111(a) and § 111(b). Nor did the Court constructively amend the Indictment—both the Indictment and the Court's instructions recited the elements required by § 111(b).

As to Purnell's claim of error with respect to the absence of a lesser-included offense charge, neither the Government nor the defense requested such a charge. *See* Tr. 144–45, 148. And the evidence did not support one. The Court therefore did not give such an instruction to the jury. Under Federal Rule of Criminal Procedure 31(c), a jury may convict a defendant of the offense charged or "an offense necessarily included in the offense charged." This rule benefits both parties: It "aid[s] the prosecution when it has failed to prove all of the elements of the offense charged in the indictment" and "provide[s] the jury with an alternative which may permit mitigation of punishment for the greater offense." *United States v. Dhinsa*, 243 F.3d 635, 674 (2d Cir. 2001) (quoting *United States v. Giampino*, 680 F.2d 898, 900 n.1 (2d Cir. 1982)). But the Court may provide a lesser-included offense instruction only if "based on the evidence at trial, 'a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater.'" *Id.* at 674 (*Schmuck v. United States*, 489 U.S. 705, 716 n.8 (1989)).

---

[3] Purnell separately argues that willfulness is not an element required by § 111. That is wrong. To be convicted of assault under § 111, a defendant must have acted willfully, as opposed to negligently or recklessly. *See United States v. Delis*, 558 F.3d 177, 182 (2d Cir. 2009); *Chestaro*, 197 F.3d at 605. In any event, even if adding that element to the charge had been error, it benefited, rather than prejudiced, Purnell, as it required the jury to find *more* than the statute required to convict him.

Here, the jury could not have rationally convicted Purnell of simple assault under § 111(a) while acquitting him of aggravated assault under § 111(b). The distinction between those two offenses is that a conviction for aggravated assault under § 111(b) requires evidence that the defendant used a deadly or dangerous weapon or that his actions caused bodily injury, whereas a conviction for simple assault under § 111(a) does not require proof of that element. Here, Sharma testified, and Purnell himself conceded, that he had smashed Sharma over the head with a dangerous weapon, his cane, *see* Tr. 196, and thereby opened a bloody head wound that required seven staples to close, *see* Tr. 80, 168. Purnell's sole defense was that he had acted in self-defense. That justification, if proven, would not have given the jury a basis to convict Purnell of simple assault under § 111(a) while acquitting him of aggravated assault under § 111(b); rather, the jury would have acquitted Purnell of both crimes. And if the jury rejected that defense, as it evidently—and rationally—did here, the only logical verdict would be a conviction for aggravated assault under § 111(b).[4]

Purnell's counsel therefore was not, at all, ineffective in not pursuing a lesser-included charge. Purnell had no right to such a charge.

---

[4] Purnell relies on *Beck v. Alabama*, 447 U.S. 625 (1980), to argue that the Court was required to provide a lesser-included offense instruction. In *Beck*, the Supreme Court held that the death penalty may not be imposed where the jury was not permitted to consider a lesser-included, non-capital offense. *Id.* at 627. Neither the Supreme Court nor the Second Circuit has resolved whether lesser-included offense instructions are required in non-capital cases, *see Lopez v. Graham*, No. 11 Civ. 07729 (PAC) (MH), 2014 WL 2940855, at *7 (S.D.N.Y. June 30, 2014) (citing, *inter alia*, *Jones v. Hoffman*, 86 F.3d 46, 48 (2d Cir. 1996)), and "habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure," *Teague v. Lane*, 489 U.S. 288, 316 (1989). In any event, as noted, Purnell was not entitled to a lesser-included offense instruction because, on the evidence at trial, no jury "could rationally find [him] guilty of the lesser offense, yet acquit him of the greater." *Dhinsa*, 243 F.3d at 674 (citation omitted).

### C.     Remaining Issues

Purnell asserts that the Government presented perjured testimony at trial and breached its duty to disclose exculpatory evidence. These assertions lack a factual foundation. First, Purnell notes that Government witness Raymond Seay testified that he did not know Purnell. *See* Tr. 43. But Purnell does not argue, much less provide any evidence to support, that in fact he and Seay knew each other and that Seay therefore testified falsely. Second, Purnell contends that he did not receive video tapes and other information from Michael Barry, an investigator who, Purnell claims, defense counsel retained in preparing for trial. While it is theoretically possible that Barry came into possession of exculpatory evidence, the Government's disclosure obligation applies only to information that the *Government* possesses. *See United States v. Jackson*, 345 F.3d 59, 67 (2d Cir. 2003) (citing *Brady v. Maryland*, 373 U.S. 83 (1963)). As the Second Circuit has already held, there is "no evidence that the government withheld material information from the defense." *Purnell*, 541 F. App'x at 129.

Purnell's final argument—that he was prejudiced by the cumulative effect of the jury substitution errors, the instructional errors, his trial counsel's failure to object to those errors, and his appellate counsel's failure to raise those issues on appeal—is unavailing. As discussed in Sections III.A and III.B, *supra*, Purnell has not identified any deficiencies in his counsel's performance that prejudiced him. Considering the alleged errors cumulatively therefore does not change the result; zero plus zero is still zero.

The Court notes, finally, that even assuming *arguendo* a lapse by his counsel, Purnell cannot establish the second required element under *Strickland*: prejudice. The evidence at trial was overwhelming that Purnell had smashed open the head of a VA employee with his cane, and Purnell, in his testimony, conceded the point. And his defense, self-defense, was risible. It was

16

refuted by all eye and ear-witnesses, inconsistent with the physical evidence, and illogical, as the evidence supplied no plausible reason why the pharmacist, Sharma, who did not know Purnell and had no reason for hostility toward him, would have savaged Purnell and "bashed" him in the face with a telephone. For this independent reason, Purnell's petition fails.

## CONCLUSION

For the foregoing reasons, Purnell's petition to vacate his sentence pursuant to 28 U.S.C. § 2255 is denied. The Clerk of Court is directed to terminate the motions pending at 12 Cr. 6, Dkt. 43, and 15 Civ. 636, Dkt. 1, and to close this case. The Clerk of Court is further directed to send appeal instructions to Mr. Purnell.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: July 23, 2015
New York, New York